UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LISA D.,

             Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

_____

**DECISION AND ORDER**

1:19-CV-01038 EAW

## INTRODUCTION

Represented by counsel, plaintiff Lisa D. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 12; Dkt. 13), and Plaintiff's reply (Dkt. 14). For the reasons discussed below, the Commissioner's motion (Dkt. 13) is granted and Plaintiff's motion (Dkt. 12) is denied.

## BACKGROUND

Plaintiff protectively filed her application for DIB on October 11, 2016.  (Dkt. 7 at 13, 64).[1]  In her application, Plaintiff alleged disability beginning September 16, 2014.  (*Id.* at 13, 151).  Plaintiff's application was initially denied on December 21, 2016.  (*Id.* at 13, 65-69).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Rosanne M. Dummer on August 16, 2018, with Plaintiff appearing in person in Buffalo, New York, and the ALJ presiding via video from Falls Church, Virginia.  (*Id.* at 13, 33-55).  On September 5, 2018, the ALJ issued an unfavorable decision.  (*Id.* at 10-27).  Plaintiff requested Appeals Council review; her request was denied on June 10, 2019, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 4-9).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

I.     **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2015.  (Dkt. 7 at 15).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity from September 16, 2014, the alleged onset date, through December 31, 2015, the date last insured.  (*Id.*).

At step two, the ALJ found that through the date last insured Plaintiff suffered from the severe impairments of: left knee derangement with arthroscopic surgery; lumbar and cervical spine discogenic and degenerative disc disease, status post 2013 microdiscectomy; obesity; and right elbow epicondylitis.   (*Id.* at 16).  The ALJ further found that Plaintiff suffered from the nonsevere impairments of: hypothyroidism; gastroesophageal reflux; dry eyes; and cataracts.  (*Id.*).

At step three, the ALJ found that through the date last insured Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.*).

Before proceeding to step four, the ALJ determined that through the date last insured Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the additional limitations that Plaintiff could:

> lift/carry twenty pounds occasionally and ten pounds frequently; sit six of eight hours, two hours at a time; and stand/walk six of eight hours a day, two hours at a time.  She could frequently reach overhead; she could occasionally operate foot controls.   [Plaintiff] could occasionally climb ramp/stairs,

balance, and stoop.  She should not climb ladders/scaffolds, kneel, crouch, crawl or work at unprotected heights. [Plaintiff] could occasionally work around mechanical parts, operate a motor vehicle, and tolerate exposure to humidity/wetness, extreme[] cold/hear and vibration.  She could frequently tolerate exposure to pulmonary irritants and exposure to vibrations.[2]

(*Id.* at 17).  At step four, the ALJ found, relying on the testimony of a vocational expert ("VE"),  that through the date last insured Plaintiff was capable of performing her past relevant work as a recruiter, general office worker, and admissions coordinator.  (*Id.* at 23). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 24).

## II.    The ALJ's Decision is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing: (1) the ALJ erred in adopting the opinion of non-examining and non-treating medical expert Dr. Lee Fischer; (2) the ALJ improperly weighed the opinions of Plaintiff's treating orthopedists and treating chiropractor; (3) the ALJ failed to satisfy her duty to develop the record; and (4) the ALJ performed an inadequate assessment of Plaintiff's credibility.   The Court has considered these arguments and finds them without merit, for the reasons set forth below.

---

[2]      Although Plaintiff has not raised this issue, the Court notes that there is an internal inconsistency in the ALJ's RFC finding, inasmuch as it states both that Plaintiff can tolerate only occasional exposure to vibration and that she can tolerate frequent exposure to vibration.  However, the past relevant work that Plaintiff was found capable of performing does not involve any exposure to vibration, and so the error is harmless.  *See* Dictionary of Occupational Titles 166.267-010, 1991 WL 647347; *id.* 219.362-010, 1991 WL 671953; *id*. 915.133-010, 1991 WL 68786.

A.      **Assessment of Dr. Fischer's Opinion**

Pursuant to the HALLEX, "a manual that provides the Social Security Administration with a set of guidelines and procedures," *Dority v. Comm'r of Soc. Sec.*, No. 7:14-CV-00285 GTS, 2015 WL 5919947, at *5 (N.D.N.Y. Oct. 9, 2015), an ALJ has the discretion to obtain an opinion from a medical expert, "either in testimony at a hearing or in responses to written interrogatories," for numerous reasons, including for assistance in determining whether a claimant's impairment meets a Listing and to help "clarify and explain the evidence or help resolve a conflict because the medical evidence is contradictory, inconsistent, or confusing." HALLEX, *1-2-5-34. When to Obtain Medical Expert Opinion*, available online at https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-34.html; *see also Jeffrey C. v. Berryhill,* No. 6:18-CV-505 FJS DJS, 2019 WL 3361256, at *5 (N.D.N.Y. May 22, 2019 ("[A]n ALJ has discretion to call a medical expert to assist with determining the impact of a claimant's impairments."), *adopted*, 2019 WL 2482087 (N.D.N.Y. June 14, 2019).

In this case, the ALJ submitted written interrogatories to Dr. Fischer on July 25, 2018, asking numerous questions regarding Plaintiff's functional abilities and whether her impairments met a Listing. (Dkt. 7 at 866-78). Dr. Fischer submitted a response to the ALJ's interrogatories on August 3, 2018, including a medical source statement regarding Plaintiff's ability to perform work-related activities. (*Id*. at 880-98). In her decision, the ALJ afforded Dr. Fischer's opinion "significant weight," explaining that he had performed a longitudinal review of the medical evidence, that his opinions were consistent with the

overall record, and that he is board certified in family medicine and recognized by the Commissioner as a medical expert. (*Id.* at 23).

The Court finds no error in the ALJ's assessment of Dr. Fischer's opinion. Plaintiff contends that Dr. Fischer's opinion is not consistent with the overall record, but merely cites to evidence that she contends the ALJ should have weighed differently. For example, Plaintiff notes that in opining as to whether Plaintiff met or equaled any Listings, Dr. Fischer "cited to MRI of the spine from October of 2014, EMGs from 2014, a left knee MRI from 2014, and the consultative examiner's finding" in reaching his determinations, but claims that "the record contains clinical findings and additional diagnostic reports" that support a contrary finding. (Dkt. 12-1 at 24). However, "whether there is substantial evidence supporting [Plaintiff's] view is not the question here; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013). Plaintiff's disagreement with the weight that Dr. Fischer gave various evidence may establish that "reasonable minds would disagree as to whether [Plaintiff] is disabled," *id.*, but that is not a basis for reversal or remand.

Plaintiff also argues that the ALJ failed to sufficiently identify the other evidence of record supporting Dr. Fischer's opinions. The Court disagrees. The ALJ clearly set forth the following evidence that supported Dr. Fischer's conclusions: the opinion of consultative examiner Dr. Donna Miller, who examined Plaintiff on October 15, 2015, and opined that Plaintiff had only mild limitations for heavy lifting/carrying, kneeling, squatting, pushing, and pulling; Dr. Miller's physical examination, which showed that Plaintiff could perform a full square, had a normal gait, had a full range of motion in her

shoulders, elbows, forearms, wrists, knees, and ankles, and had 5/5 strength in all extremities and 5/5 grip strength; an opinion from a treating orthopedist in October 2015 that Plaintiff could "resume full and unrestricted work duties with the right elbow"; normal EMG/nerve conduction studies of the upper and lower extremities in November 2014; the objective medical evidence cited by Dr. Fischer (including cervical and lumbar spine MRIs in October 2014 showing no significant herniation and EMGs of the cervical and lumbar spine in November 2014 that were normal and negative for radiculopathy); Plaintiff's largely normal daily functioning; and physical examination at an orthopedic follow up in November 2015 showing that Plaintiff had a normal gait without assistive device, intact sensation, and 5/5 strength bilaterally in the upper and lower extremities. (Dkt. 7 at 18-23). It was not error for the ALJ to rely on Dr. Fischer's expert assessment of this evidence in determining Plaintiff's RFC.

### B.    Assessment of Other Medical Opinions of Record

Plaintiff also argues that the ALJ erred in assessing the opinions of her treating orthopedists and her treating chiropractor. The Court again disagrees.

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the

opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted).  These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Id.*  "An ALJ's failure to explicitly apply the[se] . . . factors when assigning weight at step two is a procedural error."  *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted).  However, such error is harmless if "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed."  *Id.* (quotations omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)).  "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

In this case, after suffering from a motor vehicle accident in September 2014, Plaintiff was seen by various orthopedists, who stated on a number of occasions that she had a temporary total disability precluding her from returning to her work as a shift

supervisor/lead parking attendant.  (*See* Dkt. 7 at 22).  The ALJ gave these opinion "limited weight," because: (1) the standard for assessing disability is different in the workers' compensation context than in the social security context; (2) these opinions were all for limited duration and Plaintiff's capabilities were improving during the relevant time period; (3) physical examination shortly before the date last insured showed only minor abnormalities; and (4) Dr. Fischer opined that these opinions were not supported by the evidence of record.  (*Id.* at 22-23).

The Court finds no reversible error in the ALJ's consideration of the opinions of Plaintiff's orthopedists.  While the ALJ did not explicitly walk through the factors of the treating physician rule, the ALJ's decision notes these physicians' specialties and the time frame and context in which they treated and examined Plaintiff.   Further, the ALJ gave good reasons for affording limited weight to these opinions.  The Court notes as an initial matter that the ALJ was mistaken when she stated that the opinions were offered in a workers' compensation context; although there are some references to workers' compensation in the record (*see, e.g.,* Dkt. 7 at 489), the Commissioner concedes these opinions were actually issued for purposes of Plaintiff's insurance claim and lawsuit related to her accident (Dkt. 13-1 at 22).  Nevertheless, the ALJ's error about the context in which these statements were issued does not change the fact that they simply opined on the ultimate issue of disability, which is "reserved to the Commissioner"—in other words, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted).  The ALJ accordingly

did not err in declining to afford controlling weight to Plaintiff's treating orthopedists on this issue.

The ALJ further explained that the treating orthopedists' opinions were inconsistent with the evidence of record, including Plaintiff's objective physical examination in November 2015, and with Dr. Fischer's opinion.  These are appropriate, good reasons to afford less than controlling weight to a treating physician's opinion, and the Court finds no error in the ALJ's assessment.

Turning to the opinions of Plaintiff's treating chiropractor, the Court notes that under the regulations applicable to Plaintiff's claims, a chiropractor is not an acceptable medical source, and accordingly, the ALJ was not required to apply the treating physician rule in assessing these opinions.  *See Brush v. Berryhill*, 294 F. Supp. 3d 241, 259 (S.D.N.Y. 2018) ("[A]n ALJ is not required to give a chiropractor's opinions controlling weight under the Commissioner's regulations for treating sources.").  In any event, the ALJ considered the treating chiropractor's opinions and found them inconsistent with the evidence of record, including Dr. Fischer's opinion; this was within her discretion and does not warrant reversal or remand.

**C.**   **Duty to Develop the Record**

The Court further rejects Plaintiff's argument that the ALJ failed to discharge her duty to develop the record.  "Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Act, because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."  *Ubiles v. Astrue*, No. 11-CV-6340T(MAT), 2012

WL 2572772, at *7 (W.D.N.Y. July 2, 2012) (internal quotations omitted). Here, Plaintiff contends that the ALJ was obligated to recontact her treating orthopedists and treating chiropractor for additional information. However, "[t]he duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings. . . . Where the record before the ALJ is complete enough to form a determination as to plaintiff's disability, the ALJ is not required to recontact a medical source." *Raftis v. Comm'r of Soc. Sec.*, No. 5:17-CV-0514 (WBC), 2018 WL 1738745, at *6 (N.D.N.Y. Apr. 6, 2018) (citing *Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir. 2017)). In this case, the record before the ALJ, including Plaintiff's testimony and treatment records and the opinions of Dr. Miller and Dr. Fischer, was sufficient to assess the opinions of Plaintiff's treating orthopedists and treating chiropractor and to determine whether Plaintiff was disabled. The ALJ was accordingly under no obligation to recontact Plaintiff's treatment providers or to otherwise further develop the record. *See Varalyn B. v. Commissioner*, No. 5:18-CV-978(ATB), 2019 WL 5853388, at *5 (N.D.N.Y. Nov. 8, 2019) ("Despite the duty to develop the record, remand is not required where the record contains sufficient evidence from which the ALJ can assess the claimant's RFC.").

## D. <u>Assessment of Plaintiff's Credibility</u>

Finally the Court finds no error in the ALJ's assessment of Plaintiff's credibility.[3] The ALJ, who has the "opportunity to observe witnesses' demeanor, candor, fairness,

---

[3]     The SSA has adopted the use of the term "consistency" rather than "credibility." *See* Social Security Ruling 16-3p, https://www.ssa.gov/OP_Home/rulings/di/01/SSR2016-03-di-01.html. However, the underlying standards have not changed, and Plaintiff specifically refers to the ALJ having performed a "credibility assessment" (Dkt. 12-1 at 27). Accordingly, the Court has used the term credibility in its discussion.

intelligence and manner of testifying," is "best-positioned to make accurate credibility determinations." *Whiting v. Astrue*, No. CIV.A. 1:12-274, 2013 WL 427171, at *6, (N.D.N.Y. Jan. 15, 2013), *adopted*, 2013 WL 427166, (N.D.N.Y. Feb. 4, 2013). As such, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Perez v. Barnhart*, 440 F. Supp. 2d 229, 235 (W.D.N.Y. 2006) (quotation omitted).

In assessing the credibility of a claimant's subjective complaints, the regulations applicable to Plaintiff's claims require ALJs to employ a two-step inquiry. *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce'" her symptoms. *Id.* (quoting 20 C.F.R. § 404.1529(c)(1) ). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Id.* The ALJ applied the two-step inquiry in this case and determined that Plaintiff's subjective complaints were not fully credible. (Dkt. 7 at 21).

Plaintiff contends that the ALJ improperly concluded that Plaintiff's "rather normal daily functioning" was inconsistent with her subjective complaints. (Dkt. 12-at at 28). More specifically, Plaintiff contends that the ALJ did not accurately summarize Plaintiff's testimony. The Court disagrees. As the ALJ correctly noted, Plaintiff reported being able to independently care for herself, including maintaining hygiene, cooking, cleaning, shopping, doing laundry, driving, and managing her finances. (Dkt. 7 at 22). Plaintiff was

further able to socialize and engage in leisure activities such as visiting the mall, maintaining relationships with friends and family members, watching television, and teaching religious education. (*Id*. at 21-22). The ALJ did not err in concluding that these activities were "rather normal," despite Plaintiff having also testified to needing breaks and sometimes having trouble concentrating or requiring assistance. (*See* Dkt. 12-1 at 28).

Further, contrary to Plaintiff's argument, the ALJ did not find that she was capable of holding down employment because she was able to engage in activities of daily living. Instead, the ALJ found that Plaintiff's activities of daily living were inconsistent with the level of impairment she claimed. In considering activities of daily living, "[t]he issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial [gainful] activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence." *Morris v. Comm'r*, No. 5:12-CV-1795 MAD/CFH, 2014 WL 1451996, at *6 (N.D.N.Y. Apr. 14, 2014). This is so because "[o]ne strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record." *Id.* Here, the ALJ appropriately concluded that Plaintiff's self-reported activities of daily living were inconsistent with her subjective complaints; this was not error. *See Farszmil v. Comm'r of Soc. Sec.*, No. 1:19-CV-00390 EAW, 2020 WL 3496296, at *5 (W.D.N.Y. June 29, 2020).

In sum, having consider Plaintiff's arguments and the record as a whole, the Court finds no basis for reversal or remand.

- 15 -

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 13) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 12) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: March 1, 2021
        Rochester, New York